UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
:
Remy Dauphin, On Behalf of Himself and All : 06 Civ. 2730 (SHS)
Other Persons Similarly Situated, :
: OPINION & ORDER
Plaintiffs, :
:
-against- :
:
Chestnut Ridge Transportation, Inc., and :
John Corr, :
:
Defendants. :
:
------------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

  Plaintiffs, seventeen current and former school bus drivers, bring this action seeking unpaid overtime compensation from defendants Chestnut Ridge Transportation, Inc. ("CR Transportation"), and its president, John Corr. Plaintiffs' complaint is based on the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA"), and New York state law. Plaintiff Remy Dauphin also alleges that defendants violated state law by terminating him in retaliation for his complaints of unpaid overtime. CR Transportation is a private company that contracts with public school districts in Rockland County, New York, and Bergen County, New Jersey—which are on adjacent sides of the New York-New Jersey border—to provide school bus transportation. Plaintiffs' job responsibilities consist primarily of driving students back and forth between home and school. CR Transportation, however, offers its employee bus drivers additional work assignments, called "charters," that involve driving students and others to school events such as field trips and athletic competitions. Plaintiffs allege that defendants failed to pay overtime at the FLSA's overtime rate for charters, instead compensating charter work at the regular rate of

1

pay.  In response, defendants seek to avail themselves of the "motor carrier exemption" to the FLSA's overtime provision, which exempts interstate motor carriers regulated by the Secretary of Transportation (the "Secretary") from the FLSA's overtime rate.  See 29 U.S.C. § 213(b)(1).

Defendants have moved for summary judgment on the ground that the motor carrier exemption authorizes them to compensate drivers for overtime at the regular rate of pay rather than at the overtime rate.  As explained below, issues of fact exist on this record as to whether the exemption applies, and defendants' motion for summary judgment as to plaintiffs' FLSA and state-law overtime claims is accordingly denied.  Defendants' motion for summary judgment as to plaintiff Dauphin's retaliation claim is granted because Dauphin has not presented any evidence that he was retaliated against for complaining to his employer about unpaid overtime.

## I. BACKGROUND

Except as noted, the following facts are not in dispute.  Defendant CR Transportation and a related entity, CR Transit (collectively, "Chestnut Ridge"), provide school bus services to public and private schools and various preschool programs and summer camps in Rockland and Bergen Counties.  (Defendants' Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Defs.' 56.1") ¶¶ 1, 3, 26, 27; Plaintiffs' Counterstatement Pursuant to Local Civil Rule 56.1 ("Pls.' 56.1") ¶¶ 1, 3, 26, 27.)  Chestnut Ridge compensates drivers at a rate of one and one half times their normal hourly rate of pay for overtime they incur in the course of these regular runs. (Defs' 56.1 ¶ 53; Pls.' 56.1 ¶ 53.)

In addition to regular runs, Chestnut Ridge provides one-time charters for sports teams, school field trips, clubs, and other school-related activities and summer camp activities; for weddings and bar mitzvahs; and for group trips to concerts, theme parks, sporting events, and museums.  (Defs.' 56.1 ¶¶ 42-45; Pls.' 56.1 ¶¶ 42-45.)

2

CR Transportation operates out of two bus yards: one on Red Schoolhouse Road in Chestnut Ridge, New York (the "Schoolhouse Road yard"), and another on West Church Street in Spring Valley, New York (the "West Church Street yard"). (Defs.' 56.1 ¶ 6; Pls.' 56.1 ¶ 6.) CR Transit operates out of a bus yard in Hillburn, New York (the "Hillburn yard"). (Defs.' 56.1 ¶ 8; Pls.' 56.1 ¶ 8.) Both the Schoolhouse Road and Hillburn yards are located within one mile of the New York-New Jersey border. (Defs.' 56.1 ¶¶ 7, 9; Pls.' 56.1 ¶¶ 7, 9.)

The parties disagree regarding the extent to which Chestnut Ridge drivers cross state lines as part of their regular runs. Defendants contend that Chestnut Ridge drivers must necessarily do so on a daily basis as part of their regular duties because the Schoolhouse Road and Hillburn yards are so close to the border. (Defs.' 56.1 ¶ 15; Affidavit of Patricia Riviello ("Riviello Aff.") ¶¶ 13, 15.) Plaintiffs claim, however, that only a minority of drivers cross state lines during regular runs. (Pls.' 56.1 ¶ 15; Affidavit of Anthony Contento in Opposition to Defendant's Motion for Summary Judgment ("Contento Aff.") ¶¶ 6-8; Affidavit of Gina Conklin in Opposition to Defendant's Motion for Partial Summary Judgment ("Conklin Aff.") ¶¶ 3-5.) It is undisputed, however, that the provision of transportation services for seven schools or school districts—the German School, Pearl Rivers Schools, Saddle River Day School, St. Joseph's Regional High School, Bergen Catholic, the Academy of Holy Angels, and the Immaculate Heart Academy—require Chestnut Ridge drivers to cross state lines. (Defs.' 56.1 ¶ 17; Pls.' 56.1 ¶ 17.)

In all, about eighty of Chestnut Ridge's 375 drivers perform approximately 600 charters each month. (Defs.' 56.1 ¶¶ 10, 11, 54, 55; Pls.' 56.1 ¶¶ 10, 11, 54, 55.) The record does not establish how many of these drivers are involved in performing charters or how many charters involve interstate travel. Defendants state that "many" charters were to destinations in other

states. (Defs.' 56.1 ¶ 46; Riviello Aff. ¶ 41.) Plaintiffs, on the other hand, contend that only a "small minority" of charters called for interstate travel. (Pls.' 56.1 ¶ 46.) Plaintiff Anthony Contento asserts that of the fifty-eight charters he performed between 2004 and 2005, seventeen involved travel to and from points in New Jersey. (Contento Aff. ¶ 13.) Plaintiff Gina Conklin states that in the course of her employment with Chestnut Ridge between 2002 and 2006, she drove at least eighty-six charters, of which only four involved crossing state lines. (Conklin Aff. ¶ 7.) It is undisputed that the most common route for drivers performing charters for the Pearl River School District required crossing into New Jersey. (Defs.' 56.1 ¶ 16; Pls.' 56.1 ¶ 16.)

Defendants assert that all of their drivers are expected to perform charters, which are assigned based on drivers' seniority and the company's needs, and that a driver can be assigned at any time to a charter involving interstate travel. (Defs.' 56.1 ¶¶ 20, 56.) Plaintiffs, however, contend that charters are strictly voluntary. Plaintiff Conklin states that from 2002 to 2004, charters were assigned randomly to drivers who volunteered. (Conklin Aff. ¶ 8.) Beginning in 2004, Chestnut Ridge compiled a list of drivers who had expressed an interest in doing charter work and assigned charters from within that list on the basis of seniority. (Id. ¶ 9.) In November 2005, Chestnut Ridge instituted a policy of removing drivers from the list once they had declined two charters. (Id. ¶ 10.) Conklin, however, who assisted Chestnut Ridge's charter coordinator from April 2005 to April 2006, states that despite this policy she never penalized a driver for refusing a charter. (Id. ¶¶ 11, 12.)

Plaintiff Dauphin worked for Chestnut Ridge for a decade between the end of October 1995 and the beginning of November 2005. (Defs.' 56.1 ¶ 12; Pls.' 56.1 ¶ 12.) During his employment, he performed charters on daily basis. (Defs.' 56.1 ¶ 65; Pls.' 56.1 ¶ 65.) On April 7, 2006, Dauphin initiated the present action on behalf of himself and all similarly situated

4

persons alleging violations of the FLSA, see 29 U.S.C. § 207, and New York law, see N.Y. Labor Law § 160; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2. He asserts his FLSA claim as a collective action pursuant 29 U.S.C. § 216(b) and his state-law overtime claim as a putative class action pursuant to Fed. R. Civ. P. 23. Sixteen other current and former Chestnut Ridge drivers have since opted into the FLSA collective action portion of this litigation. (Defs.' 56.1 ¶ 14; Pls.' 56.1 ¶ 14.) In addition, Dauphin alleges that defendants terminated his employment in retaliation for his complaints to them regarding unpaid overtime, in violation of section 662 of the New York Labor Law. The record before the Court contains no information regarding the circumstances of Dauphin's termination.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate if the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In determining whether a genuine issue of material fact exists, the Court "is to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004). The party opposing summary judgment, however, "may not rely on mere conclusory allegations or speculation, but instead must offer some hard evidence" in support of its factual assertions, D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998), such that "'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party,'" Golden Pac. Bancorp v. FDIC, 375 F.3d 196, 200 (2d Cir. 2004) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

5

B. The FLSA and the Motor Carrier Exemption

The FLSA requires that employees engaged in interstate commerce be paid "at a rate not less than one and one-half times the [employee's] regular rate" of pay for work in excess of forty hours in any workweek. 29 U.S.C. § 207(a). Congress, however, has exempted a broad range of employees from that rule. See 29 U.S.C. § 213. Among these exemptions is the motor carrier exemption, which provides that the FLSA's overtime provision "shall not apply . . . to any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to [49 U.S.C. §] 31502." 29 U.S.C. § 213(b)(1). The purpose of this exemption is to prevent conflict between the FLSA and the Motor Carrier Act ("MCA").[1] Masson v. Ecolab, Inc., 04 Civ. 4488 (MBM), 2005 U.S. Dist. LEXIS 18022, at *13-14 (S.D.N.Y. Aug. 18, 2005). The motor carrier exemption applies to any employee for whom the Secretary has authority to regulate qualifications and maximum hours of service, regardless of whether the Secretary has exercised that authority. Bilyou v. Dutchess Beer Distribs., Inc., 300 F.3d 217, 229 (2d Cir. 2002).

The provision of the United States Code referenced in the motor carrier exemption to the FLSA, 49 U.S.C. § 31502, provides that "[t]he Secretary of Transportation may prescribe requirements for . . . qualifications and maximum hours of service of employees of, and safety and operation of equipment of, a motor carrier." 49 U.S.C. § 31502(b)(1). The scope of that authority is defined by reference to another statutory provision, 49 U.S.C. § 13501. See id. § 31502(a)(1) ("This section applies to transportation . . . described in sections 13501 and 13502

---

[1] For example, the United States Supreme Court has explained that provisions compensating overtime at higher that the regular rate of pay, by encouraging drivers to perform overtime, may undermine safety regulations intended to limit the number of continuous hours that drivers are on the road. See Levinson v. Spector Motor Serv., 330 U.S. 649, 657, 67 S. Ct. 931, 91 L. Ed. 1158 (1947).

of this title . . . ."). Section 13501, in turn, gives the Secretary jurisdiction over, <u>inter</u> <u>alia</u>, transportation "by motor carrier . . . to the extent that passengers, property, or both are transported by motor carrier . . . between a place in (A) a State and a place in another State; [or] (B) a State and another place in the same State through another State." <u>Id.</u> § 13501.

Exemptions to the FLSA "are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." <u>Arnold v. Ben Kanowsky, Inc.</u>, 361 U.S. 388, 392, 80 S. Ct. 453, 4 L. Ed. 2d 393 (1960); <u>see also</u> <u>Bilyou</u>, 300 F.3d at 222. Defendants bear the burden of proving that the exemption applies. <u>Bilyou</u>, 300 F.3d at 222.

*1.  The Motor Carrier Exemption and School Bus Transportation*

Plaintiffs contend that school bus transportation is specifically exempted by statute from the motor carrier exemption from the FLSA, which has the effect of placing it within the FLSA's protection. The exemption in question is found at 49 U.S.C. § 13506, which reads, in pertinent part:

> Neither the Secretary [of Transportation] nor the [Surface Transportation] Board has jurisdiction <u>under this part</u> over . . . a motor vehicle transporting only school children and teachers to and from school.

49 U.S.C. § 13506(a) (emphasis added). Sections 13506 and 13501 are found in the same part of the United States Code—Part B of Subtitle IV of Title 49—and thus section 13506's limitation of the Secretary's jurisdiction "under this part" implicates the Secretary's jurisdiction as defined in section 13501. Plaintiffs contend that because the Secretary's power to set qualifications and maximum hours of service is defined by reference to the Secretary's jurisdiction under section 13501, <u>see</u> 49 U.S.C. § 31502(a)(1), it follows that section 13506 precludes the Secretary from setting qualifications and maximum hours for school bus drivers and thus excludes such

7

drivers from the scope of the motor carrier exception. See Mielke v. Laidlaw Transit, Inc., 102 F. Supp. 2d 988 (N.D. Ill. 2000).

Plaintiffs' argument, however, is foreclosed by Bilyou. There, the United States Court of Appeals for the Second Circuit considered the effect of another exemption, found at 49 U.S.C. § 13505, for transportation of property by a person engaged in a business other than transportation in furtherance of that other business. Bilyou, 300 F.3d at 225. The plaintiff driver in Bilyou contended—as plaintiffs do here—that he performed overtime for which he should have been compensated pursuant to the FLSA's overtime provision and, as here, the defendants countered that the plaintiff was subject to the motor carrier exemption. Id. at 218. After determining that the section 13505 exemption applied because the transportation at issue was in furtherance of the defendant's beer and beverage wholesaling business, the court concluded that "[s]ection 13505 has no bearing on the Secretary's power, as described in 29 U.S.C. § 213(b)(1), to 'establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49.'" Id. at 226. As the court explained, section 13505's limitation on the Secretary's jurisdiction "under this part" applies only to the economic and licensing authority conferred by Part B of Subtitle IV of Title 49 of the United States Code, and has no effect on the Secretary's authority pursuant to section 31502, which is found in a different part of Title 49. Id.

The operative language of section 13506 is identical to that of the section 13505 exemption addressed in Bilyou, in that both purport to limit the Secretary's jurisdiction only "under this part," and plaintiffs offer no convincing reason why the effect of the two provisions on the motor carrier exemption should be different. Plaintiffs rely primarily on Mielke, which held that the motor carrier exemption does not apply to school bus drivers because of the operation of section 13506. 102 F. Supp. 2d at 992. That opinion, however, is a district court

opinion from another circuit, and it is the rulings of the Second Circuit that bind this Court.

Plaintiffs also contend that the Department of Transportation ("DOT") construes section 13506 to limit the Secretary's power to set qualifications and maximum hours of service pursuant to section 31502. They note that the Federal Motor Carrier Safety Regulations contain an exclusion for "school bus operations," 49 C.F.R. § 390.3(f)(1), which is defined as "the use of a school bus to transport school children and/or school personnel from home to school and from school to home," id. § 390.5. Contrary to plaintiffs' contention, however, this exclusion does not give effect to the section 13506 exemption. Rather, it reflects the directive of section 206(f) of the Motor Carrier Safety Act of 1984, Pub. L. No. 98-554, 1984 Stat. 2217, that "the Secretary shall waive application of the regulations issued under this section with respect to schoolbuses . . . , unless the Secretary determines that making such regulations applicable to such schoolbuses is necessary for public safety taking into account all Federal and State laws applicable to such schoolbuses." See 53 Fed. Reg. 18,042 (May 19, 1988). Thus, the exclusion reflects a determination by the DOT that regulation of home-to-school and school-to-home school bus transportation is not "necessary for public safety," given the array of provisions regulating school bus transportation, notwithstanding the Secretary's statutory authority to regulate such transportation. See id. at 18,043.

Thus, the section 13506 exemption does not exclude school bus transportation from the scope of the motor carrier exemption.

 2. *Applicability of the Motor Carrier Exemption to Plaintiffs*

Whether the motor carrier exemption applies to an employee depends on the nature of

9

both the employer's and employees' activities. 29 C.F.R. § 782.2(a).[2] The employer must be within the jurisdiction of the Secretary of Transportation by virtue of operating as a "motor carrier" or "motor private carrier," as defined by the statute. See 49 U.S.C. § 31502(b) (granting the Secretary jurisdiction over "motor carriers" and "motor private carriers"); Boutell v. Walling, 327 U.S. 463, 467, 66 S. Ct. 631, 90 L. Ed. 786 (1946) (finding the motor carrier exemption inapplicable because the defendant employer was not a "carrier" within the meaning of the Motor Carrier Act). In addition, the employee's activities must affect vehicular "safety of operations in interstate or foreign commerce." Pyramid Motor Freight Corp. v. Ispass, 330 U.S. 695, 698, 67 S. Ct. 954, 91 L. Ed. 1184 (1947); see United States v. Am. Trucking Ass'ns, 310 U.S. 534, 553, 60 S. Ct. 1059, 84 L. Ed. 1345 (1940).

Chestnut Ridge is subject to the Secretary's jurisdiction because it is a motor carrier as defined by statute. A motor carrier is "a person providing commercial motor vehicle (as defined in [49 U.S.C. §] 31132) transportation for compensation." 49 U.S.C. § 13102(14). A "commercial motor vehicle," in turn, is defined, in pertinent part, as a "vehicle used on the highways in interstate commerce to transport passengers or property" that either "has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds" or "is designed or used to transport more than 8 passengers (including the driver) for compensation." Id. § 31132(1); 49 C.F.R. § 390.5. It is undisputed that Chestnut Ridge provides transportation services for compensation. There is also no dispute that Chestnut Ridge provides transportation by means of

---

[2] The Department of Labor's interpretive guidance regarding the motor carrier exemption, although not binding on this Court, see Levinson, 330 U.S. at 676-77; Troutt v. Stavola Bros., 107 F.3d 1104, 1108 n.1 (4th Cir. 1997), is entitled to respect to the extent that it has the "power to persuade," Christensen v. Harris County, 529 U.S. 576, 587, 120 S. Ct. 1655, 146 L. Ed. 2d 621 (2000) (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944)).

buses and vans, both of which satisfy the statutory definition of "commercial motor vehicle" because they are designed to transport more than eight persons, including the drivers. (Defs.' 56.1 ¶¶ 33-34; Pls.' 56.1 ¶¶ 33-34.)

As to the second requirement, to come within the motor carrier exemption from the FLSA, an employee must "engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." 29 C.F.R. § 782.2(a); see Levinson v. Spector Motor Serv., 330 U.S. 649, 685, 67 S. Ct. 931, 91 L. Ed. 1158 (1947) (holding that the Interstate Commerce Commission, the Secretary's precursor under the Motor Carrier Act, "has power to establish qualifications and maximum hours of service for those employees whose service affects the safety of transportation of . . . carriers . . . of property in interstate or foreign commerce"). The activities of drivers affect safety of operations of motor vehicles, and thus, drivers may come within the scope of the motor carrier exemption if their duties involve "transportation on the public highways of passengers . . . in interstate . . . commerce." 29 C.F.R. § 782.2(a); see Morris v. McComb, 332 U.S. 422, 430, 68 S. Ct. 131, 92 L. Ed. 44 (1947) (full-time drivers are "within the definition of that class of work" that the Secretary may regulate "if the work is done in interstate commerce"); Levinson, 330 U.S. at 675-76. The Court must determine, therefore, whether the activities of Chestnut Ridge's drivers involve interstate transportation of passengers in a way that would bring them within the scope of the motor carrier exemption from the FLSA.

Where only a part of an employee's activities affect the safety of operations of motor vehicles in interstate commerce, courts consider "the character of the activities rather than the proportion of either the employee's time or his activities" in determining whether the employee

comes within the scope of the Secretary's authority to regulate qualifications and maximum hours of service. McComb, 332 U.S. at 431. Because the motor carrier exemption "depends upon the activities of the individual employees," a defendant generally must present evidence as to the character of the activities of each plaintiff in order to determine whether he or she is subject to the exemption. Masson, 2005 U.S. Dist. LEXIS 18022, at *17-18 (quoting Goldberg v. Faber Indus., Inc., 291 F.2d 232, 235 (7th Cir. 1961)). For employees whose "continuing duties . . . have no substantial direct effect on . . . safety of operations or [whose] safety-affecting activities are so trivial, casual, and insignificant as to be de minimis, the exemption will not apply . . . in any workweek so long as there is no change in his duties." 29 C.F.R. § 782.2(b)(3); see Pyramid, 330 U.S. at 708; Crooker v. Sexton Motors, Inc., 469 F.2d 206, 210 (1st Cir. 1972).

Where, however, interstate travel constitutes a "natural, integral and . . . inseparable part" of the employees' duties, such that any employee is likely to be called on to perform interstate travel, the employees are all subject to the motor carrier exemption while they fill that position regardless of the actual number of hours they individually devote to interstate travel. McComb, 332 U.S. at 433; see Goldberg, 291 F.2d at 235. In McComb, the United States Supreme Court considered whether drivers who, as a group, spent only 4 percent of their time transporting goods in interstate commerce and the remainder driving intrastate were subject to the motor carrier exemption. 332 U.S. at 432-33. Although the interstate travel was not distributed equally among the employer's drivers, the Court held that all of the employees' activities affected the safety of operations of motor vehicles in interstate commerce because the interstate trips were an expected and inseparable part of the employees' duties, as follows:

> [A]pparently in the normal operation of the business, these strictly interstate commerce trips were distributed generally throughout the year and their performance was shared indiscriminately by the drivers and was mingled with the performance of other like driving services rendered by them otherwise than in

12

interstate commerce. These trips were thus <u>a natural, integral, and apparently inseparable</u> part of the common carrier service of the petitioner and his drivers.

Id. at 433 (emphasis added); see also 29 C.F.R. § 782.2(b)(3) ("As a general rule, if the bona fide duties of the job performed by the employee are in fact such that he is (or in the case of a member of a group of drivers . . . is likely to be) called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities . . . he comes within the exemption in all workweeks when he is employed at such job.").

Thus, for the motor carrier exemption from the FLSA to apply, defendants here must establish either that the activities of the individual plaintiffs involved interstate travel of a character that was more than de minimis or that interstate travel was a "natural, integral and . . . inseparable part" of the position plaintiffs held. McComb, 332 U.S. at 433. The present record does not establish either of these conditions as a matter of law.

First, defendants have not offered evidence establishing the character of the activities of each plaintiff. The only evidence in this regard concerns plaintiffs Contento and Dauphin. Contento testified at his deposition that he crossed state lines for work "every day" as part of his regular runs. (Dep. of Anthony Contento at 41, Ex. E to Affirmation of John K. Diviney, Esq. dated June 1, 2007 ("Diviney Affirmation").) Similarly, Dauphin testified that he crossed state lines "[o]n a regular basis." (Dep. of Remy Dauphin at 43, Ex. D to Diviney Affirmation.) However, because this testimony fails to establish whether interstate travel was part of either plaintiff's job duties during the entire period at issue in this litigation, the Court cannot determine whether the motor carrier exemption applies to them for all the relevant workweeks.

Second, defendants have failed to show that interstate travel "was shared indiscriminately by the drivers and was mingled with the performance of other like driving services rendered by them otherwise than in interstate commerce." McComb, 332 U.S. at 433. Some Chestnut Ridge

13

drivers cross state lines for regular runs involving several schools or school districts, including the German School, Pearl Rivers Schools, Saddle River Day School, St. Joseph's Regional High School, Bergen Catholic, the Academy of Holy Angels, and the Immaculate Heart Academy. (Defs.' 56.1 ¶ 17; Pls.' 56.1 ¶ 17.) The record, however, does not disclose how these runs were assigned and whether they were shared among all Chestnut Ridge drivers. Moreover, the evidence is in conflict regarding how often drivers who provided transportation for other schools or school districts traveled across state lines as part of their regular runs. Defendants note that the Schoolhouse Road and Hillburn yards are located near the New Jersey border and state that drivers based at these yards must cross state lines in the course of their regular runs. (Defs.' 56.1 ¶ 15; Riviello Aff. ¶ 13.) Plaintiffs, on the other hand, relying on the affidavits of plaintiffs Contento and Conklin, assert that few drivers ever cross state lines during regular runs.[3] (Pls.' 56.1 ¶ 15; Contento Aff. ¶¶ 6-8; Conklin Aff. ¶¶ 3-5.) Plaintiff Conklin states that she never left New York State while doing regular runs for the Rampano Central School District from the Hillburn yard. (Conklin Aff. ¶¶ 3-4.) Defendants' statement that some drivers based at the Schoolhouse Road and Hillburn yards cross state lines daily because these yards are so close to the New Jersey border cannot substitute for evidence that all of its drivers are likely to be called upon to do so as part of their normal job duties, particularly given that Chestnut Ridge drivers also operate out of a third yard, the West Church Street yard (Defs.' 56.1 ¶ 6; Pls.' 56.1 ¶ 6), that defendants do not contend is near the New Jersey border.

The evidence is also in conflict regarding how often drivers performed interstate charters

---

[3] Contento's affidavit, unlike Conklin's, does not disclose the basis of his knowledge regarding the routes chosen by drivers other than himself. To the extent that this affidavit contains facts that would not be admissible at trial, it may not be used to oppose summary judgment. Fed. R. Civ. P. 56(e). Nonetheless, the facts set forth in Conklin's affidavit are sufficient to create a disputed issue of fact.

14

and whether performing charters was a regular or expected part of drivers' duties.  Defendants offer only the vague assertion that "many" charters performed by Chestnut Ridge drivers involved interstate travel.  (Defs.' 56.1 ¶ 46; Riviello Aff. ¶ 41.)  Although it is undisputed that the most common route for drivers performing daily charters for the Pearl River School District crossed into New Jersey (Defs.' 56.1 ¶ 16; Pls.' 56.1 ¶ 16), the record does not disclose how many drivers were responsible for these runs or how these runs were assigned.  Nor is it clear whether interstate charters were an expected and essential part of drivers' normal duties or were, instead, optional and distinct from their core duties performing regular runs.  Although defendants contend that drivers could be assigned to interstate charters at any time (Defs.' 56.1 ¶ 20), plaintiff Conklin, who was involved in assigning charters between 2005 and 2006, asserts that charters were voluntary (Conklin Aff. ¶¶ 11, 12).

Without resolution of these disputed issues of fact, it is impossible to determine whether the motor carrier exemption applies to plaintiffs.  See Masson, 2005 U.S. Dist. LEXIS 18022, at *1, 32 (denying summary judgment for defendant employer where genuine issues of fact remained as to the character of the plaintiffs' activities involving interstate commerce).  Thus, on the basis of the present record, defendants have failed to carry their burden of establishing that the motor carrier exemption to the overtime provisions of the FLSA applies.

C.      State Law Claims

Plaintiffs allege violations New York Labor Law § 160 and the New York Department of Labor's Minimum Wage Order, found at title 12, § 142-2.2 of the Official Compilation of Codes, Rules and Regulations of the State of New York, which is analogous to the FLSA's overtime provision.  See Zheng v. Liberty Apparel Co., 355 F.3d 61, 78 (2d Cir. 2003).  As defendants note, this regulation provides, with limited exceptions not relevant here, that an employer's

overtime obligations are "subject to the exemptions of sections 7 and 13 of 29 U.S.C. 201 et seq., the Fair Labor Standards Act of 1938." 12 N.Y.C.R.R. § 142-2.2. These exemptions include the motor carrier exemption. Thus, for the same reason that summary judgment is denied with respect to plaintiffs' FLSA claim, summary judgment on plaintiffs' state-law overtime claim is also denied.

Defendants also contend that plaintiff Dauphin's claim for retaliatory discharge pursuant to New York Labor Law section 662 should be dismissed as a matter of law. Dauphin, however, has presented no evidence at all that he was discharged for retaliation for complaining to his employer about his overtime payments. Accordingly, plaintiffs' retaliation claim is dismissed as a matter of law.

### III. CONCLUSION

Because issues of fact remain as to whether or not the motor carrier exemption applies, defendants' motion for summary judgment is denied with respect to plaintiffs' FLSA and state-law overtime claims. Defendants' motion for summary judgment is granted, however, with respect to plaintiff Dauphin's retaliatory discharge claim.

Dated: New York, New York
March 25, 2008

SO ORDERED:

Sidney H. Stein, U.S.D.J.